*FILED*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

*97 NOV 17  PH 2: 14*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

| | |
|---|---|
| **HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT**, | ] <br> ] <br> ] |
| Plaintiff(s), | ] |
| | ]   CV-97-N-1555-S |
| vs. | ] <br> ] |
| **HOUSING AUTHORITY RISK RETENTION GROUP, INC., et al.**, | ] <br> ] <br> ] <br> ] |
| Defendant(s). | ] |

*ENTERED*

*NOV 17 1997*

## Memorandum of Opinion

### I.   Background.

The Housing Authority of the Birmingham District ("HABD") brings this action against its general liability insurance carrier and two of its employees alleging bad faith failure to defend against and pay certain claims and fraudulent misrepresentation. Defendants are the Housing Authority Risk Retention Group ("HARRG"), a corporation, and John Salisbury ("Salisbury") and Robert Sullivan ("Sullivan"), who are sued as individuals and in their official capacities  as corporate officers of HARRG. *Complaint* at ¶¶ 15-43. HABD seeks compensatory and punitive damages, costs and fees, as well as injunctive relief. *Id.* at ¶¶ 21, 28, 32, 38, 43, 48. Originally filed in the Circuit Court of Jefferson County, Alabama, the action was removed to this court with jurisdiction resting on 28 U.S.C. § 1332. *Notice of Removal*, filed June 26, 1997.  Defendant HARRG has answered the complaint, and defendants Sullivan and Salisbury have moved to dismiss as to each of them. *Answer*, filed July 31, 1997; *Motion to Dismiss*, filed July 31, 1997.

*17*

The motion to dismiss has been fully briefed and is ripe for decision. The motion will be granted as to Mr. Salisbury and denied as to Mr. Sullivan.

**II.   Statement of the Case.**

HABD is a public housing agency organized under the laws of the State of Alabama and doing business in Jefferson County, Alabama. *Complaint* at ¶ 1; *Answer* at ¶ 1.   HABD purchased a Commercial General Liability Policy, dated June 1, 1993, from HARRG, an insurance company incorporated in Vermont and qualified to do business in Alabama. *Complaint* at ¶¶ 2, 5; *Answer* at ¶¶ 2, 5;  *Motion to Dismiss* at ¶ 1.  HARRG employed Salisbury first as Executive Director for approximately five years, then as Chief Executive Officer for four years. *Complaint* at ¶ 3; *Answer* at ¶ 3; *Motion to Dismiss* at ¶ 5. He resigned his employment with HARRG on November 22, 1996.[1] *Motion to Dismiss* at ¶ 5. HARRG employed Sullivan first as Acting Claims Director from August 1994 until May 1995, then as Claims Director from May 1995 until the present. *Complaint* at ¶ 4; *Answer* at ¶ 4; *Motion to Dismiss* at ¶ 7.

Both Salisbury and Sullivan resided and worked in Connecticut during their entire tenure at HARRG. Neither has ever resided in Alabama. *Motion to Dismiss* at ¶¶ 5-7; *Affidavit of Sullivan* at ¶ 8. Sullivan traveled to Alabama several times in order to meet HABD personnel, to review claims files and to address indemnity issues, but not on a case specific basis. *Motion to Dismiss* at ¶ 7. Also, according to HABD, Sullivan and Salisbury corresponded with HABD regarding its claims and provided HABD with information

---

[1] The motion actually states that Mr. Salisbury resigned on November 22, 1997. That date is obviously wrong. Elsewhere in the submission, the date is stated to be as shown in the text.

2

concerning its claims. *Complaint* at ¶ 7. Sullivan testifies, and HABD does not refute, that he has not otherwise transacted business in Alabama, contracted to supply goods in Alabama, solicited business in Alabama, derived any revenue or income from activities in Alabama, owned real property in Alabama, personally contracted to insure any person or property in Alabama, or entered the boundaries of Alabama other than as stated. *Affidavit of Sullivan* at ¶¶ 14-19. Sullivan continues to live and work in Connecticut. *Motion to Dismiss* at ¶¶ 5-7; *Affidavit of Sullivan* at ¶ 8. Salisbury, on the other hand, upon leaving HARRG, left the State of Connecticut, and his current whereabouts is unknown.[2] *Motion to Dismiss* at ¶ 6; *Affidavit of Sullivan* at ¶¶ 9-10; *Responsive Brief* at 6.

On May 28, 1997, HABD attempted service of process upon all three defendants by certified mail at HARRG's corporate offices in Cheshire, Connecticut. *Motion to Dismiss* at ¶ 6; *Responsive Brief* at 6; *Affidavit of Sullivan* at ¶ 9. An agent or employee of HARRG received and signed for the summons and complaints directed to each defendant. *Id.* Defendants, however, deny that anyone in its employ had the authority to accept service of process on behalf of Salisbury. *Motion to Dismiss* at ¶ 6; *Affidavit of Sullivan* at ¶ 9. In response, HABD simply states, "Plaintiff has no knowledge of the present employment or whereabouts of Defendant Salisbury and cannot defend against the argument set forth by Plaintiff." *Responsive Brief* at 6.

---

[2] Sullivan testifies that, upon termination of his employment at HARRG, Salisbury has no longer been involved with HARRG. *Affidavit of Sullivan* at ¶ 9. According to Sullivan, HARRG has a forwarding address for Salisbury at a post office box, but not a phone number or a street address. *Id.* at ¶ 10. "It is our understanding that he moved to an area in the state of Maine near the city of Portland," says Sullivan. *Id.*

In this lawsuit, HABD alleges that each defendant wrongfully denied it or its employees coverage with respect to three other lawsuits as follows: (1) *Maxine J. Amos v. HABD*, CV-94-H-0611-S, filed March 16, 1994, in U.S. District Court for the Northern District of Alabama, alleging employment discrimination; (2) *Nathaniel Player v. UNUM, et al.*, CV-94-573, filed on December 21, 1997, in the Circuit Court of Talladega County, Alabama, against a HABD employee, a former HABD employee and the HABD disability insurance carrier, alleging failure to pay disability benefits; and (3) *Willie Garth, et al. v. HABD*, CV-95-B-1139-S, filed on May 4, 1995, in U.S. District Court for the Northern District of Alabama, alleging discriminatory employment practices. *Complaint* at ¶¶ 6-13; *Answer* at ¶¶ 6-13; *Motion to Dismiss* at ¶ 4. Here, HABD alleges and HARRG admits that HABD properly notified HARRG of the pending actions against it and that HARRG denied coverage. *Complaint* at ¶¶ 7, 10, 13; *Answer* at ¶¶ 7, 10, 13; *Motion to Dismiss* at ¶ 4. HABD further alleges, and Sullivan and Salisbury admit, that Sullivan and Salisbury participated in HARRG's decision to deny coverage with regard to each action. *Complaint* at ¶¶ 7, 10, 13; *Motion to Dismiss* at ¶ 8; *Affidavit of Sullivan* at ¶ 12. Finally, HABD alleges, and all defendants deny, that HARRG, Sullivan and Salisbury conspired with each other to defraud HABD, by making misrepresentations about the coverage of the insurance contract between HABD and HARRG. *Complaint* at ¶¶ 40-42; *Answer* at 40-42; *Motion to Dismiss* at ¶ 8.

HABD, however, alleges no specific facts with regard to its fraud claim or with regard to any activities of Sullivan or Salisbury outside their official capacities as employees of HARRG. *Complaint* at ¶¶ 1-48; *see also Answer* at ¶¶ 7, 10, 13, 45, 46. Both

4

Salisbury and Sullivan did visit Alabama in November 1995, to attend a meeting to discuss the coverage determinations previously made by HARRG. *Motion to Dismiss* at ¶ 9; *Affidavit of Sullivan* at ¶ 11. HABD alleges that it corresponded and spoke by telephone with both Salisbury and Sullivan "on numerous occasions regarding the coverage of these claims." *Responsive Brief* at 2; *see also Complaint* at ¶ 7. Sullivan testifies that neither he nor Salisbury ever made "determinations in a personal capacity with respect to coverage." *Affidavit of Sullivan* at ¶ 12. Nevertheless, HABD argues, "[i]t is a factual issue as to whether both individuals were acting within the scope of their employment when said decisions were made." *Responsive Brief* at 4-5.

## III.   Discussion.

Sullivan and Salisbury each argue two separate grounds in support of their motion to dismiss. First, they argue that Salisbury has not been properly served with a summons and complaint. *Movants' Brief* at 4-6. Next, they argue that the court lacks *in personam* jurisdiction of both Sullivan and Salisbury. *Id.* at 6-12.

### A.   Proper Service of Process as to Salisbury.

Salisbury argues service of process was insufficient when HABD served him by certified mail at the address is his former place of employment, which he had left six months before. The parties agree that the Alabama Rules of Civil Procedure govern the issue raised by Salisbury.[3] *Movants' Brief* at 4; *Responsive Brief* at 6. HABD claims that

---

[3]Title 28 U.S.C. § 1448, which governs service of process in removed actions, provides:

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases

it properly served Salisbury by certified mail.[4]   Under the Alabama rule governing service by certified mail, "[w]hen the person to be served is an individual, the clerk must request restricted delivery, unless otherwise ordered by the court." Ala. R. Civ. Pro. 4.2(b)(1)(A). "Restricted Delivery" requires that the postal carrier deliver the summons and complaint to the addressee or an agent of the addressee who is specifically authorized in writing by the addressee to receive his mail. Ala. R. Civ. Pro. 4.1, committee comments (quoting Postal Service Manual, § 165.31, Feb. 7, 1975).   The available evidence is that HABD did not request such restricted delivery, was not relieved of that obligation by the state court, and that, in fact, the person at HARRG who signed the return receipt was not authorized to receive service on behalf of Salisbury. Because service with regard to Salisbury did not comply with the requirements of Alabama law, that service will be quashed.

Furthermore, although due process does not require that the defendant receive actual notice of the action, it does require that service of process must be done in a way that is reasonably calculated to give the defendant actual notice of the proceedings against him and an opportunity to be heard. See *Milliken v. Myer*, 311 U.S. 457 (1940). Service by mail to a former employer may not be reasonably calculated to give actual notice and is, therefore, not sufficient to satisfy the protections of the U.S. Constitution.

---

originally filed in such district court.  28 U.S.C § 1448.

In determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was attempted. *Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972).

[4] HABD claims to have perfected service pursuant to "ARCP 4.1(c)." *Responsive Brief* at 6.  However, Rule 4.1 of the Alabama Rules of Civil Procedure governs "in-state service." Ala. R. Civ. P. 4.1(a).  The court assumes that HABD mistakenly referred to the wrong provision, and instead, it meant that service was perfected pursuant to Ala. R. Civ. P. 4.2(b)(1), the out-of-state certified mail service provision.

The court finds that service of process upon Salisbury was insufficient and is due to be quashed. The plaintiff is allowed thirty (30) days from the date on which this order is entered to perfect service of process on defendant Salisbury and to file proof of such service with the court.

## B.   In Personam Jurisdiction as to Sullivan.

Defendants, on two separate grounds, claim that the court is without personal jurisdiction of both Salisbury and Sullivan: (1) their only contact with the State of Alabama was in the course of their employment; and (2) even those contacts are not sufficient minimum contacts upon which to base *in personam* jurisdiction. *Movants' Brief* at 6, 8, 11. Because Salisbury was not properly served, it is unnecessary to address the personal jurisdiction issue as to him.

On questions of *in personam* jurisdiction, the plaintiff bears the initial burden of establishing a prima facie case of jurisdiction over a nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). When no evidentiary hearing is held on the motion to dismiss,[5] the plaintiff establishes its prima facie case by presenting enough evidence to defeat a motion for summary judgment, formerly called a directed verdict. *Id.* The court must accept as true the allegations in the complaint, to the extent that they are uncontroverted by the defendant's affidavits. *Id.* When the evidence conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

---

[5] An evidentiary hearing is discretionary with the court. *Madara, v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Because the evidence before the court in this case is sufficient to decide the issue, no evidentiary hearing is necessary in this case.

Sullivan moves the court to dismiss all claims against him because he argues that he lacks sufficient contacts with the forum state to justify the court in subjecting him to its personal jurisdiction in Alabama. The analysis is in two steps. First, the court must consider whether it has jurisdiction under the state long-arm statute. *Madara*, 916 F.2d at 1514; *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *Alexander Proudfoot Co. [World Headquarters L.P. v. Thayer ]*, 877 F.2d [912,] 919 (11ᵗʰ Cir. 1989). If personal jurisdiction exists under the forum state's long-arm statute, the federal court then must consider whether the exercise of personal jurisdiction would be consistent with federal due process requirements. *Id.* Only if both prongs of the analysis are answered in the affirmative may a federal or state court exercise personal jurisdiction over a nonresident defendant. *Id.* at 1514.

In Alabama, the reach of the state long-arm statute, by its own terms, is generally equal to that of the Federal Constitution. Ala. R. Civ. P. 4.2(a)(2)(I); *see also Morris*, 843 F.2d at 492 n.3 (citing *Alabama Power Co. v. VSL Corp.*, 448 So. 2d 327, 328 (Ala. 1984)); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991). However, the Alabama Supreme Court recognizes some limits on personal jurisdiction over individual corporate employees when the only basis for their contact with the state is in the course of their employment. *Sekeres v. Physicians Weight Loss Centers*, 646 So.2d 640 (Ala. 1994); *Brooks v. Inlow*, 453 So.2d 349 (Ala. 1984); *Thames v. Gunter-Dunn, Inc.*, 373 So.2d 640 (Ala. 1979); *see also State Dept. of Revenue v. Rivers*, 668 So.2d 786, 788 (Ala. Civ. App. 1995). Referred to as the "fiduciary shield doctrine," this protection extends to corporate employees who have never been to Alabama, but have some contact with the

8

state through their employer. *Brooks*, 453 So.2d at 351-52, 354-57 (limiting *Thames*, 373 So.2d 640 to "non-resident defendants who had never been to Alabama and who had never 'personally performed any act or omitted to perform any act in Alabama which resulted in tortuous injury in Alabama'"); *Sekeres*, 646 So.2d at 641-42 (recognizing the *Brooks* limitation of *Thames*). The Alabama Supreme Court has been very clear, however, that this protection does not apply to employees whose employment actually brings them to the state on corporate business and that business is the subject matter of the lawsuit. *Id.*; *see also State Dept. of Revenue*, 668 So.2d at 788; *Keelan v. Central Bank of the South*, 544 So.2d 153 (Ala. 1989); *Duke v. Young*, 496 So.2d 37 (Ala. 1986); *Alabama Waterproofing Co. v. Hanby*, 431 So.2d 141 (Ala. 1983); *View-All, Inc. v. United Parcel Serv.*, 435 So.2d 1198 (Ala. 1983).

In *Brooks v. Inlow*, the Alabama Supreme Court considered whether personal jurisdiction was proper over seven non-resident supervisory-level employees. *Brooks*, 453 So.2d at 349. The court distinguished between those employees who had never come to Alabama and those who had traveled to Alabama on the company's business, which formed the basis for the lawsuit. *Id.* at 351. Refusing to assert personal jurisdiction over the two employees who never came to Alabama, but asserting jurisdiction over those who did, the court based its holding on due process considerations, rather than the Alabama long-arm statute. *Id.* at 354-58. In this case, just as in *Brooks*, because Sullivan did actually travel to Alabama several times in order to meet HABD personnel, to review claims files and to address indemnity issues, the "fiduciary shield doctrine" does not apply to bar personal jurisdiction. Therefore, the Alabama long-arm statute does confer upon this court personal

jurisdiction over Sullivan, so long as to do so does not offend federal due process considerations.

The second prong of the two-part analysis requires the court to address whether the exercise of personal jurisdiction would be consistent with federal due process requirements. *Madara*, 916 F.2d at 1514. The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, (1945)). Due process requires sufficient "minimum contacts" between the forum state and the nonresident defendant so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, (1940)); *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. Only if each prong of the "minimum contacts" analysis is answered in the affirmative may a federal or state court exercise personal jurisdiction over a nonresident defendant. *Madara*, 916 F.2d at 1514.

Courts and commentators recognize two types of *in personam* jurisdiction: "specific" personal jurisdiction and "general" personal jurisdiction. General jurisdiction exists "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State," but the requirement for contact with the forum state is more rigorous than with specific jurisdiction. *Helicopteros,* 466 U.S. at 414-15 & n.9.

General jurisdiction requires the foreign corporation to conduct to be "continuous and systematic . . . general business" in the forum state. *Id.*

Specific jurisdiction, on the other hand, exists when the subject matter of the litigation relates to or arises out of a defendant's contacts with the forum. *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 & n.8 (1977)). In the context of specific jurisdiction, "a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Id.* According to the Supreme Court, when a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in the judgment). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum and, the litigation results from alleged injuries that "arise out of or relate to" those activities. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, (1984); *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being hailed into court there. *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297(1980). However, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State; there must be

some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, *reh'g denied*, 358 U.S. 858 (1958). This requirement assures that a defendant will not be hailed into a jurisdiction as a result of random, fortuitous, or attenuated contacts, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475; *Helicopteros*, 466 U.S. at 417; *Keeton*, 465 U.S. at 774. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 475 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction, according to the Supreme Court, is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's *own purposeful acts* will have some effect in the forum. *Asahi Metal Indus. Co. v. Superior Court*. 480 U.S. 102, 112 (1987) (emphasis added).

In this case, considering the allegations in the complaint as true and construing all the evidence before the court in favor of HABD, Sullivan has sufficient contacts with Alabama for this court to exercise specific jurisdiction over him.   Sullivan traveled to Alabama several times in order to meet with HABD personnel, to review claims files and to address indemnity issues.  Sullivan corresponded and spoke on the telephone "on numerous occasions" with HABD, in Alabama,  regarding its claims.  In November 1995, Sullivan visited Alabama again, attending a meeting to discuss the coverage determinations previously made by HARRG.  Therefore, Sullivan's contacts with Alabama, albeit only in

12

connection with his employment, are sufficient for this court to exercise personal jurisdiction over him.

Finally, exercise of personal jurisdiction over Sullivan does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Sullivan "purposefully directed" his activities to this state, thus invoking the benefits and protections of the laws of this state, and he could reasonably have anticipated being hauled into court in this state to defend himself. The factors which the court must weigh include "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). In this case, considering all the relevant factors, the court finds that subjecting Sullivan to the personal jurisdiction of the court in Alabama comports with "traditional notions of fair play and substantial justice." Therefore, all the requirements having been met, this court may properly exercise *in personam* jurisdiction over the individual defendant Sullivan.

## IV. Conclusion.

The court finds that HABD has failed to perfect service of process upon individual defendant Salisbury. The court further finds sufficient basis for *in personam* jurisdiction over individual defendant Sullivan in the United States District Court for the Northern District of Alabama, under Alabama's long arm statute and under federal due process analysis. Service of process with regard to Mr. Salisbury will be quashed and the plaintiff

13

allowed thirty (30) days to perfect service. The motion to dismiss as to the individual

defendant Sullivan will be denied. The court will enter an appropriate order in conformity

with this memorandum opinion.

Done, this ___17th___ of November, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE